1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Jan 03, 2024**

SEAN F. McAVOY, CLERK

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5

6

ROBBIN K.,[1]                                    No.    2:23-cv-00199-EFS

7

                    Plaintiff,

8                                                 **ORDER AFFIRMING THE ALJ'S
        v.                                        DENIAL OF BENEFITS**

9

MARTIN O'MALLEY, Commissioner of
Social Security,[2]

10

                    Defendant.

11

12

13

14        Due to social anxiety, agoraphobia, anxiety, difficulty sleeping, nausea,

15   irritability, fatigue, racing thoughts, depression, and trouble losing weight,

16

_____

17   [1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

18   "Plaintiff." *See* LCivR 5.2(c).

19   [2] Martin O'Malley became the Commissioner of Social Security on December 20,

20   2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section

21   205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for

22   Kilolo Kijakazi as the defendant.

23

1    Plaintiff Robbin K. claims she is unable to work full-time and applied for social-

2    security benefits. She appeals the denial of benefits by the Administrative Law

3    Judge (ALJ) on the grounds that the ALJ improperly analyzed the credibility of

4    Plaintiff's subjective complaints, and the ALJ's evaluation of the medical expert

5    opinions was flawed.  Although the record reflects that Plaintiff's impairments

6    limit her mentally, the Administrative Law Judge's (ALJ) nondisability finding is

7    adequately explained and supported by substantial evidence. For the reasons that

8    follow, the ALJ's decision is affirmed.

9                          **I.    Background**

10        In January 2018, Plaintiff filed an application for benefits under Title 2,

11   claiming disability beginning June 1, 2017, based on the mental and physical

12   impairments noted above.[3]

13        After the agency denied Plaintiff benefits, ALJ Michael Blanton held a

14   telephone hearing in February 2020, but did not issue a decision before taking

15   administrative leave.[4] On June 13, 2022, ALJ Deborah Van Vleck (the ALJ) held a

16   hearing via telephone, at which Plaintiff and a vocational expert testified.[5] After

17

18

19

20   _____

21   [3] AR 267, 305.

22   [4] AR 38-64.

23   [5] AR 65-104.

the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

- The opinions of state agency evaluator Michael Regets, PhD, to be persuasive.

- The opinions of state agency evaluator John Robinson, PhD, not subject to consideration because he was not an acceptable medical source.

- The opinions of consultative examiner Catherine MacLennan, PhD, to be unpersuasive.

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024.

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2017, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: a mental impairment diagnosed to include depression

_____

[6] AR 12-37.  Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 25-27.

and anxiety disorder, bipolar II disorder, and post-traumatic stress disorder.

- Also at step two, the ALJ found the following conditions to be non-severe: obesity and gastrointestinal problems/irritable bowel syndrome.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform a full range of work at all exertional levels with the following exceptions:

  [Plaintiff] can perform simple, routine, and repetitive tasks that are not production rate pace (i.e. – assembly line work); [Plaintiff] can use judgment and deal with changes that are consistent with simple, routine, and repetitive tasks that are not production rate paced; with occasional interaction with supervisors and coworkers.  [Plaintiff] can never work with the public.

- Step four: Plaintiff was unable to perform her past relevant work as a mail clerk, stockroom clerk, department supervisor, and social worker.

- Step five: Plaintiff was able to perform jobs available in the national economy in substantial numbers as a floor cleaner (DOT 381.687-034), a janitor (DOT 381.687-018), and a hand launderer (DOT 361.684-010).[8]

---

[8] AR 19-30.

1    Plaintiff timely requested review of the ALJ's decision by the Appeals

2    Council and now this Court.[9]

3    ## II.    Standard of Review

4    The ALJ's decision is reversed "only if it is not supported by substantial

5    evidence or is based on legal error,"[10] and such error impacted the nondisability

6    determination.[11] Substantial evidence is "more than a mere scintilla but less than a

7    preponderance; it is such relevant evidence as a reasonable mind might accept as

8    adequate to support a conclusion."[12]

9

_____

10    [9] AR 264.

11    [10] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

12    [11] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

13    *grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

14    ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

15    nondisability determination").

16    [12] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

17    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

18    court "must consider the entire record as a whole, weighing both the evidence that

19    supports and the evidence that detracts from the Commissioner's conclusion," not

20    simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

21    143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

22    not indicate that such evidence was not considered[.]").

23

### III.   Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating Plaintiff's subjective complaints and erred when evaluating the medical opinion of Dr. MacLennan.  The Commissioner argues there was no error because the ALJ reasonably discounted Plaintiff's allegations of disabling impairments during the relevant period and reasonably assessed the medical opinions.  As is explained below, the Court agrees with the Commissioner and affirms the ALJ's nondisability finding.

**A.    Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding problems with mental impairments and social interactions.

1.    <u>Standard</u>

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[13] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing

---

[13] *Molina*, 674 F.3d at 1112.

1  reasons' for the rejection."[14] General findings are insufficient; rather, the ALJ must

2  identify what symptom claims are being discounted and what evidence undermines

3  these claims.[15] "The clear and convincing standard is the most demanding required

4  in Social Security cases."[16] Therefore, if an ALJ does not articulate specific, clear,

5  and convincing reasons to reject a claimant's symptoms, the corresponding

6  limitations must be included in the RFC.[17]

7

8

9

10

11

————————————

12

13  [14] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504

    F.3d at 1036).

14

15  [15] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v.*

16  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

    explain why he discounted claimant's symptom claims)).

17

18  [16] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

    *of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

19

20  [17] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing

21  reasons for finding Lingenfelter's alleged pain and symptoms not credible, and

    therefore was required to include these limitations in his assessment of

22  Lingenfelter's RFC.").

23

2.    <u>Plaintiff's Testimony</u>

On February 10, 2020, Plaintiff appeared with her attorney by video before ALJ Michael Blanton.[18] A vocational expert, Michael Swanson, also testified.[19] Plaintiff testified that she was 32 years old and had a bachelor's degree.[20]  She said that she had completed all but one year of courses at a community college when she was young and just went for a year.[21] She attended Shoreline Community College periodically from 2017 to 2018 and then Central Washington [University] from 2018 to 2019.[22] She dropped from full-time to part-time for two quarters because of physical symptoms caused by stress.[23] She said her coursework at Central Washington College was online and she almost did not graduate due to excessive absences.[24]

Plaintiff said that in 2016, she left her job for a new one because of family obligations and she wanted to work closer to home, but was stressed with the new

_____

[18] AR 38-64.

[19] *Id.*

[20] AR 44.

[21] *Id.*

[22] AR 45.

[23] *Id.*

[24] AR 46.

job and decided to return to school instead of working.[25] She was scared of leaving

her house and she worried that something might happen but had no specific fear.[26]

When she is very anxious, she will not complete tasks and will go and be alone.[27] She

said she has bad days and that on those days she is irritable and will isolate herself.[28]

She said that she worried she was not mentally ready to work when she finished

school.[29] She said that she called in sick for half of the time.[30]  Plaintiff said that

medication helped with her depression but did not help with her anxiety long-term.[31]

She went back to work in January 2020, and missed eight to ten days since she

started.[32]

   Plaintiff testified that in 2010 and 2011 when working at Walmart she was a

cashier and a customer service supervisor.[33] Plaintiff said she worked for the

Chelan Public Hospital as a material supply purchasing and stocking employee

---

[25] AR 47.

[26] AR 48.

[27] AR 49.

[28] AR 50.

[29] AR 51.

[30] *Id.*

[31] AR 52.

[32] AR 53-54.

[33] AR 54.

and that she delivered and stocked items and did the job for three years.[34] She left the stock clerk job because of anxiety, it was a long commute, and her boss behaved inappropriately and harassed her.[35] She reported the harassment, but it was not stopped.[36] She said she also worked in a seasonal position at a resort.[37] Plaintiff said she cannot work due to a combination of mostly mental health and gastric issues caused by anxiety.[38] She said she was taking four medications for her mental health issues: citalopram, clonazepam, Lamictal, and Wellbutrin.[39]  She said that for her gastric issues she takes nortriptyline.[40]

The VE testified that Plaintiff's past work was as a cashier, a floor manager, and a stock clerk.[41] Plaintiff testified that when she was a stock clerk she had contact with coworkers.[42] The ALJ posed a hypothetical of an individual who could not work with the public or in tandem with co-workers and the VE testified that

---

[34] AR 55.

[35] AR 55-56.

[36] AR 56.

[37] *Id.*

[38] AR 56-57.

[39] AR 56-57.

[40] AR 58.

[41] AR 60-61.

[42] AR 61.

DISPOSITIVE ORDER - 10

they could not perform past work but could work as a warehouse worker, a laundry worker, a mailroom clerk, or a routing clerk.[43] When asked if the identified jobs could be performed if the individual were limited to simple, routine tasks the VE said they could.[44] The VE testified that the tolerance for absences was 1 day per month.[45]

On June 13, 2022, Plaintiff and her attorney appeared for a hearing before ALJ Deborah Van Vleck.[46] Plaintiff testified and a vocational expert, Kent Granat, testified.[47] Plaintiff waived her right to a video or in-person hearing and agreed to have her hearing by telephone.[48] Plaintiff testified that she was 34 years old, had been married for nine years, and had two children aged 15 and 9.[49] She said she weighed 245 and that her weight had fluctuated between 210 and 280 after she had surgery for endometriosis.[50] She said she is right-handed, has a driver's

---

[43] AR 60-62.

[44] AR 62.

[45] *Id.*

[46] AR 65-104.

[47] *Id.*

[48] AR 70.

[49] AR 75.

[50] AR 76.

license, and has a bachelor's degree in social work.[51] She said she obtained an

associate's degree from Shoreline Community College in 2018, and then

transferred to Central Washington University and earned a bachelor's degree in

2019.[52] She also later took classes in medical billing but stopped due to stress.[53]

Plaintiff said she lived in a home for the last six years and has no physical

issues but mentally has difficulty leaving home.[54] She said she had that issue for

years and that all her recent college classes were online.[55] She said she received

unemployment benefits until July 2020.[56]  She said she is covered by her husband's

insurance.[57] Plaintiff testified that she was hired by the post office in May 2020,

and worked for a month as a clerk and left because she was offered a job with

Okanogan Behavioral Health.[58] Plaintiff said that while working at the post office

she had difficulty interacting with customers but did not miss any workdays during

---

[51] AR 76-77.

[52] AR 77.

[53] *Id.*

[54] AR 79.

[55] *Id.*

[56] AR 80.

[57] AR 81.

[58] *Id.*

1    the time she was working there.[59]  She said she began working for Okanogan

2    Behavioral Health in December 2019, and last worked there in June 2021.[60] She

3    said that in June 2021, she gave two-weeks notice on the advice of her husband.[61]

4    She had two jobs when there.[62] Plaintiff said that as a mental health case manager

5    from December 2019 to May 2020, she met students, evaluated them, and offered

6    counseling until they saw a therapist.[63] She said that from June 2020 to June 2021

7    she worked as a crisis case manager and hospital liaison.[64] As a crisis manager, she

8    was evaluating crisis clients and contacting their families to plan a safe place for

9    them after hospital discharge.[65] Plaintiff said that from 2014 to 2017 she worked at

10   Chelan Public Hospital as a supply material and supply tech and that she both

11   ordered products and delivered them to doctors and nurses, and that she delivered

12   for 80 percent of time and ordered for 20 percent of the time.[66] She said she left

13

14

_____

15   [59] AR 82.

16   [60] AR 82-83.

17   [61] AR 83.

18   [62] *Id.*

19   [63] *Id.*

20   [64] AR 83-84.

21   [65] AR 84.

22   [66] AR 84-85.

23

that job because it was stressful and she wanted to pursue a college degree.[67] Plaintiff said that at Walmart she was a customer service supervisor and that she left the job when she sent on maternity leave and did not return.[68]

When asked if she could return to her jobs as a stockroom clerk or a department supervisor, Plaintiff testified that she could not because just the thought of leaving home would make her sick due to anxiety.[69] When asked why she picked a socially demanding job, Plaintiff said she did not consider how demanding it would be.[70] She was asked why she did not want to work a job remotely and she responded that when she worked from home during Covid, she occasionally had to do zoom meetings and thought that most remote jobs would require occasional zoom meetings.[71] She said she gets anxious at the thought of having interactions with anyone at all.[72] Plaintiff said she had only mental impairments, and no physical ones.[73] She said she was treating with a nurse

---

[67] AR 85.

[68] AR 86.

[69] AR 86-87.

[70] AR 87.

[71] AR 88.

[72] *Id*.

[73] AR 88-89.

DISPOSITIVE ORDER - 14

practitioner and currently taking clonazepam, Abilify, and nortriptyline, none of which gave her side effects.[74] She felt that the medication helped most days.[75]

Plaintiff said she has no limitations in standing, walking, sitting, lifting, carrying, or using her hands, and can bathe and dress without help.[76] She said that four of seven days she does not want to get out of bed.[77] Plaintiff said she has not been assigned a counselor because she lives in a rural place and she does not want to get therapy from someone she worked with in the past.[78] She said her husband goes everywhere with her and she does not go out alone or attend her children's events.[79] She said she does not do chores and they go undone and that she has no friends.[80] She said her hobbies are reading and baking.[81] She flew to California to her grandfather's funeral for four days the prior January.[82] She said she has two

---

[74] *Id.*

[75] AR 90.

[76] *Id.*

[77] *Id.*

[78] AR 91.

[79] AR 92.

[80] AR 93.

[81] AR 94.

[82] *Id.*

cats and a dog and that she and her husband care for them.[83] She went to one or two movies from 2017 to 2020 and none thereafter because they were all on TV.[84] She gets up every day and gets her kids ready for school and her estranged husband picks them up and brings them to school.[85] She waits for them to return and sometimes makes meals.[86]

Plaintiff said that before she was laid off during Covid her mental health was declining.[87] She said that before Covid she missed one or two days of work in each two-week pay period.[88] If Covid had not happened she would not have been able to keep her job.[89] She was taking time off due to anxiety and depression, which was severe then.[90] She said her main symptom is anxiety and that she gets fidgety and becomes panicked.[91] When she has people coming over she will get ill with

---

[83] AR 95.

[84] *Id.*

[85] AR 96.

[86] *Id.*

[87] AR 97.

[88] AR 97.

[89] *Id.*

[90] AR 98.

[91] AR 99.

nausea and diarrhea.[92] She said that the depression makes her have suicidal ideations.[93]

The VE testified that Plaintiff's past work was mail clerk, social service aide, a stockroom clerk, and a department supervisor.[94] The VE testified that the position of Social Worker was sedentary and skilled with an SVP of 7.[95]

Given a hypothetical of an individual who could perform simple, routine, and repetitive tasks that are not production paced, have occasional interaction with supervisors and co-workers and never work with the public, the VE stated that past work was precluded.[96] The VE said the individual could perform work as a floor cleaner, a janitor, a hand launderer, a copy machine operator, or a copy examiner.[97]  The VE said the tolerance for absences would be 1 or 2 days a month and the tolerance for being off-task would be 15 percent.[98] The VE said there were no unskilled jobs that allowed working from home in substantial numbers.[99]

---

[92] *Id.*

[93] AR 100.

[94] AR 82, 84, 85,86.

[95] AR 87.

[96] AR 101-102.

[97] AR 102.

[98] AR 103.

[99] AR 104.

DISPOSITIVE ORDER - 17

3.    <u>The Medical Record</u>

On October 5, 2020, Plaintiff presented to PA-C Nancy Espelin with concerns regarding anxiety.[100]  Plaintiff reported that she had been hospitalized at Foothills Psychiatric in August and had been given gabapentin, clonazepam, and Latuda for bipolar but had stopped the medication because it made her aggressive.[101] She said she had been on clonazepam and intermittently taken another drug but her clinic was closing and she would need to find a new provider to replace PA-C Victoria Lopez.[102] Plaintiff said she was working from home and was hesitant to go to therapy because people talk but that she was going through a divorce, had broken her foot and her daughter had moved out so she was having trouble sleeping.[103] On mental status examination, she was calm and cooperative with normal speech, no hallucinations, normal attention and concentration, normal intelligence, happy mood and affect, intact insight and thought process and normal thought content.[104] PA Espelin referred Plaintiff to ARNP Katherine Kirner for psychiatry.[105]

---

[100] AR 887.

[101] AR 889.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] AR 892.

1    On November 24, 2020, Plaintiff had a follow-up appointment for medication

2  management with PA-C Roy Huffstetler.[106] Plaintiff reported that she had no

3  difficulty filling out medical forms, caring for herself, or paying for basics like food

4  and housing.[107] She said her stress level was low and that she was not in crisis but

5  wanted to reestablish care.[108] He noted that she had an appointment with

6  behavioral health in 3 weeks and with a psychiatric nurse practitioner in six

7  weeks.[109]

8    On December 4, 2020, Plaintiff presented to PA Huffstetler.[110] Plaintiff

9  reported that she had started taking clonazepam and gabapentin a week prior and

10  that it had reduced her anxiety and helped her sleep but she was still having

11  depressive symptoms.[111]  On December 15, 2020, Plaintiff returned to PA

12  Huffstetler and asked for a change in medication.[112] Her olanzapine was increased

13

14

15  _____

16  [106] AR 895.

17  [107] AR 896.

18  [108] AR 896-897.

19  [109] AR 898.

20  [110] AR 900.

21  [111] AR 902.

22  [112] AR 905-906.

23

from 5mg to 10mg daily.[113] On December 17, 2020, Plaintiff advised PA Huffstetler that she was stressed due to an upcoming custody hearing.[114]

On December 29, 2020, Plaintiff presented to ARNP Katherine Kirner.[115] Plaintiff reported that she experienced depression as a teen when her parents divorced and that in August her boss had helped her get admitted for a short inpatient stay at a psychiatric hospital in August when she had an affair and was having racing thoughts.[116] Presently, Plaintiff was stressed due to a medical diagnosis of endometriosis, a filing for bankruptcy, and a pending divorce.[117] On examination, Plaintiff was pleasant and cooperative, oriented, had normal speech, had no hallucinations and had normal attention and concentration.[118]  Plaintiff had a euthymic mood and happy affect, as well as average intelligence, intact judgment, normal thought content and motor activity, and impaired insight.[119] At a

---

[113] AR 907.

[114] AR 911.

[115] AR 912.

[116] AR 914.

[117] *Id.*

[118] AR 915.

[119] *Id.*

December 30, 2020, appointment with PA Huffstetler he noted that on examination Plaintiff was cooperative with normal speech and normal concentration.[120]

On January 7, 2021, Plaintiff was seen by LMHC Kelcie Eddy.[121] On examination LMHC Eddy noted that Plaintiff was well-groomed and cooperative; had normal speech and no hallucinations; was oriented; had normal attention and concentration; had average intelligence and intact memory; had a euthymic mood and an affect congruent to mood and anxiousness; had intact insight, judgment, and thought processes; and had normal thought content.[122] Plaintiff endorsed hopeless and helpless thoughts and of being better off dead in the context of severe anxiety but had no suicidal plan or intent.[123] Plaintiff reported severe depression, difficulty concentrating, excess worry, high irritability, muscle tension, headaches, and restlessness.[124]

On January 19, 2021, Plaintiff presented to ARNP Kirner.[125] Plaintiff reported anxiety and depression in the context of major life stressors and family

---

[120] AR 922.

[121] AR 924.

[122] AR 926.

[123] *Id.*

[124] *Id.*

[125] AR 929.

problems.[126] She reported that she had days she had anxiety about work but had not missed any days.[127] On examination, her appearance behavior and speech were normal; she had no hallucinations, concentration was normal and memory was intact; mood was euthymic and affect was pleasant and congruent; insight was impaired; and judgment, thought process, thought content, and motor activity were intact.[128] At a February 9, 2021 follow-up with ARNP Kirner, Plaintiff reported a worse mood that interfered with household activities, sleep, and work.[129] On examination, Plaintiff was well-groomed and appeared fatigued; had pleasant behavior, normal speech, normal perception, and normal attention and concentration; and had intact memory.[130] Plaintiff's mood was sad, and her affect was congruent; her insight was impaired; and her thought content, thought process, and judgment were intact.[131] Plaintiff reported suicidal ideations but denied any intent.[132]

---

[126] AR 931.

[127] *Id.*

[128] *Id.*

[129] AR 945.

[130] *Id.*

[131] *Id.*

[132] *Id.*

On May 6, 2021, Plaintiff presented to ARNP Kirner for follow-up for PTSD and bipolar disorder.[133] Plaintiff reported anxiety due to a return to work and stated that she was looking for other positions.[134] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[135] Her affect was congruent to mood, her insight was impaired, judgment was intact, and thought content and thought process were normal.[136]

On June 8, 2021, Plaintiff presented to ARNP Kirner for follow-up for PTSD and bipolar disorder.[137] Plaintiff reported that she was dealing with major life stressors and relationship issues.[138] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[139] Her affect was congruent to mood, her insight was

---

[133] AR 1356.

[134] AR 1359.

[135] *Id*.

[136] *Id*.

[137] AR 1350.

[138] AR 1353.

[139] *Id*.

impaired, judgment was intact, and thought content and thought process were normal.[140]

On July 6, 2021, Plaintiff presented to ARNP Kirner.[141] Plaintiff was maintaining functioning but was having trouble with sleep and decreased energy.[142] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[143] Her affect was congruent to mood, her insight was impaired, judgment was intact, and thought content and thought process were normal.[144]

On August 3, 2021, Plaintiff presented to ARNP Kirner.[145] She was functioning well but had low energy.[146] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[147] Her affect was congruent to mood, her insight was

---

[140] *Id.*

[141] AR 1345.

[142] AR 1348.

[143] *Id.*

[144] *Id.*

[145] AR 1341.

[146] AR 1343.

[147] AR 1344.

impaired, judgment was intact, and thought content and thought process were

normal.[148]

On October 26, 2021, Plaintiff presented to ARNP Kirner for follow-up for

PTSD and bipolar disorder.[149] On examination, Plaintiff was in no acute distress,

Plaintiff was pleasant with normal eye contact, speech, attention, concentration,

and memory.[150] Her mood was apathetic, her affect was tearful, her insight was

impaired, judgment, was intact, and thought content and thought process were

normal.[151]

On November 17, 2021, Plaintiff presented to ARNP Kirmer.[152] Plaintiff

reported she felt more anxious and stressed and was struggling with a decision to

return to school.[153] On examination, Plaintiff was in no acute distress, Plaintiff was

pleasant with normal eye contact, speech, attention, concentration, and memory.[154]

Her mood was apathetic, her affect was tearful, her insight was impaired,

---

[148] *Id.*

[149] AR 1331.

[150] AR 1334.

[151] *Id.*

[152] AR 1326.

[153] AR 1328.

[154] AR 1329.

judgment was intact, and thought content and thought process were normal.[155] She did not want to return to counseling.[156] ARNP Kirner noted that her SSRI had been stopped in August and she thought Plaintiff was becoming depressive.[157]

On December 2, 2021, Plaintiff presented to ARNP Kirner for follow-up for PTSD, and bipolar disorder.[158] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[159] Her mood was apathetic, her insight was impaired, judgment was intact, and thought content and thought process were normal.[160]

On December 23, 2021, Plaintiff presented to ARNP Kirner for follow-up for PTSD and bipolar disorder.[161] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration,

---

[155] *Id.*

[156] *Id.*

[157] *Id.*

[158] AR 1321.

[159] AR 1324.

[160] *Id.*

[161] AR 1316.

and memory.[162] Her mood was apathetic, her insight was impaired, judgment was intact, and thought content and thought process were normal.[163]

On February 2, 2022, Plaintiff presented to ARNP Kirner for follow-up for PTSD and bipolar disorder.[164] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[165] She had a happy mood and affect, intact thought content and thought process, and no suicidal ideations.[166]

On March 17, 2022, Plaintiff presented to ARNP Kirner for follow up for generalized anxiety disorder.[167] Plaintiff was worried that she would fail a college course.[168] On examination, Plaintiff was in no acute distress, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[169] She had a happy mood and affect, intact thought content and thought process, and no

---

[162] AR1319.

[163] *Id.*

[164] AR 1301.

[165] AR 1304.

[166] *Id.*

[167] AR 1295.

[168] AR 1298.

[169] *Id.*

suicidal ideations.[170] Plaintiff was worried about school and not being able to keep an A grade.[171]

On April 14, 2022, Plaintiff presented to ARNP Katherine Kirner for follow-up for PTSD and bipolar disorder.[172] On mental status examination, Plaintiff was pleasant with normal eye contact, speech, attention, concentration, and memory.[173] She had a happy mood and affect, intact thought content and thought process, and no suicidal ideations.[174] ARNP Kirner noted that Plaintiff's symptoms were relatively well-controlled with mild to moderate symptoms despite situational stressors.[175] ARNP Kirner noted that Plaintiff was ambivalent about counseling and declined to engage with Behavioral Health Services.[176]

4. The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable impairments

---

[170] *Id.*

[171] AR 1304.

[172] AR 1290.

[173] AR 1293.

[174] *Id.*

[175] *Id.*

[176] AR 1294.

1  not entirely consistent with the medical evidence and other evidence in the

2  record.[177]

3         With regard to Plaintiff's issues with her mental health, the ALJ articulated

4  her reasoning as follows:

> Regarding the claimant's mental health impairment, the record
> indicates the claimant complained of depression, anxiety, panic attacks,
> social anxiety, high irritability, major life stressors, intermittent
> suicidal ideations, decreased energy, poor concentration, decreased
> effectiveness/productivity, and insomnia (Exs. 1F/20, 25, 44; 2F/11, 44,
> 71; 12F/4, 9, 39). However, despite these allegations, the claimant was
> generally noted on mental status examination to have a normal mood
> and affect with some instances of anxiousness (Exs. 1F/22, 27, 35, 55;
> 2F/11, 35, 63, 78; 3F/4; 11F/5; 12F/4, 9, 74).  She also had normal
> speech, full orientation, adequate fund of knowledge, average
> intelligence, logical and organized thought processes, unremarkable
> thought content, grossly intact memory, good attention and
> concentration, and fair/intact insight and judgment (Exs. 1F/22, 27;
> 2F/11, 63, 78; 3F/9; 5F/80, 84, 90, 134; 9F/22; 11F/5, 10; 12F/4, 9, 55,
> 70). The claimant was prescribed medication, with improvement in her
> symptoms (Exs. 1F/20, 21, 23, 26, 31; 2F/17, 50, 61, 71; 3F/7, 14; 9F/22,
> 23).  The claimant had one self-admitted inpatient psychiatric
> admission in August 2020 for suicidal thoughts, but she left against
> medical advice after one week due to feeling things were unstable at
> home (Exs. 6F/5; 9F/17, 34).  She actively denied psychological
> symptoms on the record, including delusions, visual/auditory
> hallucinations, and suicidal ideation or homicidal ideations (Exs. 1F/22;
> 5F/47, 80; 12F/4, 15, 30, 45, 55).  In addition, more recent records
> showed the claimant reported a big improvement in her overall mood
> and stability and her symptoms were relatively well controlled with
> medication (Ex. 12F/4, 15).[178]

The ALJ went on reason further that:

_____

[177] AR 25.

[178] AR 25.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant reported her symptoms improved and were relatively well controlled with medications (Ex. 11F/4, 15, 34). Throughout the relevant period the claimant was able to attend school online, obtain two degrees, and work a detailed job full-time, all facts that supporting the finding she possesses the capacity to perform simple work. In 2017 the claimant reported she was taking classes full-time and working full-time (Ex. 1F/38, 44). She reported doing well when she was taking college classes (Ex. 1F/20). In 2018, she received her associates degree in General Studies at Shoreline Community College (Testimony). Thereafter, in June 2019 she received a bachelor's degree in Social Work from Central Washington University (Testimony). The claimant worked socially demanding and detailed oriented task jobs at Okanogan Behavioral Healthcare (Testimony). She also took classes for medical coding and billing for at least six months and reported doing well (Ex. 12F/34, 39, 45; Testimony). She reported searching for jobs, going through interviews, and that she believed she could perform an office position, supporting the conclusion she has possessed to the ability to sustain the mental demands of work despite her mental health symptoms (Ex. 12F/35, 45, particularly if she were to select employment within the residual functional capacity assessed.  In addition, the claimant was generally able to perform activities of daily living without significant difficulty.[179]

4. <u>Analysis</u>

The ALJ's reasoning describes three instances in which she found Plaintiff's subjective allegations to be at odds with the record:  that Plaintiff was able to engage in activities of daily living and work in stressful and demanding jobs during the relevant time period, that Plaintiff's medical record indicates that she had predominantly benign findings on examination in the relevant time period, and that the medical record indicates that even Plaintiff's moderate symptoms appear

[179] AR 26.

1    to have been successfully treated with medication during the latter part of the

2    relevant period.  Throughout her brief, Plaintiff argues that the ALJ's reasoning

3    fails to take into account that Plaintiff suffered from anxiety when she left home.

4              a.    _Plaintiff's activities_

5         The ALJ considered that Plaintiff's activities and abilities were inconsistent

6    with her symptom reports.[180] If a claimant can spend a substantial part of the day

7    engaged in pursuits involving the performance of work-related functions, the ALJ

8    may find these activities inconsistent with the reported disabling symptoms.[181]

9    Here, the ALJ highlighted that Plaintiff's activities included attending school

10   online, obtaining two degrees, working at a detailed job full-time, and attending job

11   interviews.[182]  The ALJ highlighted that Plaintiff believed that she could perform

12   an office position, and that this supports the conclusion that she could perform

13   simple work.[183]

14        The Court finds no error in the ALJ's reasoning regarding Plaintiff's ability

15   to work during the relevant period in several socially demanding jobs.  It was the

16   testimony of Plaintiff that she voluntarily left her job in 2016 when she decided to

17

18   _____

18   [180] AR 26-27.

19   [181] _Molina v. Astrue_, 674 F.3d 1104, 1113 (9th Cir. 2012) (superseded in part on

20   other grounds by statute).

21   [182] AR 26.

22   [183] _Id._

23

return to school full-time.[184] Between 2017 and 2019, Plaintiff attended Shoreline Community College and then transferred to Central Washington University, where she obtained her bachelor's in social work.[185] While Plaintiff asserts that she was forced to take part-time classes due to stress and almost did not graduate, the record belies that assertion.  Plaintiff completed a four-year degree in less than four years and her reports to her medical providers during that time was that she was stressed because she wanted to keep an A average.[186] Even if the Court credits Plaintiff's testimony as true that for one semester she was stressed and needed to take fewer classes, she made up for that by later taking more classes, or made up for that in some other way because she graduated on schedule, if not ahead of it.

Similarly, the record does not support Plaintiff's assertions that her difficulty with performing the jobs she held as a postal employee, mental health case worker, or crisis case manager is indicative of an inability to engage in the simple, routine, repetitive work provided for by the ALJ's formulated RFC. Plaintiff described her position as a postal worker as requiring her to have frequent to constant contact with the public and despite her assertions that she had

---

[184] AR 47.

[185] AR 45.

[186] AR 1304.

1    difficulty with that contact she also testified that he did not miss any time from

2    that job while she performed it and left it because she was offered a better job.[187]

3         From June 2020 through June 2021, Plaintiff worked as a mental health

4    case manager and a crisis case manager, and the ALJ classified the positions as

5    social worker (DOT 195.107-010).[188] Pursuant to the Dictionary of Occupational

6    titles, the firth digit in a DOT code is for the amount of and nature of interaction

7    with "people" and ranges from a high of 0 to a low of 8.  The higher the number, the

8    more frequent and intensive interaction would be.  A fifth digit people code of "0"

9    denotes the highest degree of contact with others and is described as follows:

10   "Mentoring: Dealing with individuals in terms of their total personality in order to

11   advise, counsel, and/or guide them with regard to problems that may be resolved by

12   legal, scientific, clinical, spiritual, and/or other professional principals."[189]  At her

13   January 19, 2021 appointment with ARNP Kirner, Plaintiff stated that she had not

14   missed any time from that job.[190]

15        While Plaintiff avers that she was unable to continue in such a highly

16   stressful position and to endure public contact, she was not fired for cause nor was

17   she advised by any health care provider to cease performing that job.  In January

18   _____

19   [187] AR 81-82.

20   [188] AR 87.

21   [189]

22   [190] AR 931.

23

2021, when she had been performing the job for seven months, she told ARNP

Kerner that she had missed no time.  She testified that she left the job because she

consulted her husband and they decided that she should take classes in medical

billing.[191] Given Plaintiff's ability to work for more than a month as a postal

counter worker with constant interaction with the public without taking time off,

and her ability to work in a highly stressful position for one year that required

frequent contact with individuals in crisis, the ALJ's reasoning that Plaintiff was

capable of performing simple, routine work requiring only occasional contact with

co-workers and no contact with the public is supported by the record.

### b.    *Objective mental-health findings*

The ALJ found that the objective mental status findings in the record are

also not consistent with chronic debilitating symptoms.[192] Objective medical

evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to

consider when assessing a claimant's symptoms.[193] Here, the medical record also

supports the ALJ's reasoning.  The treatment notes from Family Health Centers,

where Plaintiff was treated from 2020 through 2022, show primarily benign

findings on mental status examinations.  While there was a brief period during

---

[191] AR 83.

[192] AR 25.

[193] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of

objective medical evidence (2019).

1    which Plaintiff presented with suicidal ideation, she did not have intent and her

2    symptoms quickly improved with medication.

3        When she was assessed by PA Huffstetler, Plaintiff did not have difficulty

4    filling out medical forms and reported that she had no difficulty caring for

5    herself.[194] Throughout her treatment, Plaintiff presented with normal speech, no

6    hallucinations, normal intelligence, and normal thought content.[195]  At several

7    appointments, Plaintiff reported symptoms to her medical providers which were

8    inconsistent with the objective findings.  For example, on January 7, 2021, Plaintiff

9    reported to LMHC Kelsie that she was experiencing severe depression and

10   irritability, but on examination she was cooperative and had a euthymic mood.[196]

11       Moreover, Plaintiff's treating source, ARNP Kirner, opined that even during

12   a period of significant situational stress, Plaintiff's symptoms were mild to

13   moderate and were well-controlled with medication.[197]

14            c.    _Improvement with treatment_

15       The ALJ also reasoned that Plaintiff more recently reported a "big

16   improvement" in her overall mood and stability and that her symptoms were

17

18   _____

19   [194] AR 896.

20   [195] AR 889, 915, 922, 926, 931, 945, 1304, 1329, 1353, 1345, 1348, 1334, 1344, 1359.

21   [196] AR 923.

22   [197] AR 1293.

23

relatively well-controlled with medication.[198]  A claimant's improvement with

treatment is "an important indicator of the intensity and persistence of . . .

symptoms."[199] Symptom improvement, however, must be weighed within the

context of an "overall diagnostic picture," particularly for mental-disorder

symptoms which often wax and wane.[200] If treatment relieves symptoms to an

extent that allows the claimant to return to a level of function she had before she

developed mental-disorder symptoms, such treatment can undermine a claim of

disability.[201]  Plaintiff argues that an exhibit cited by the ALJ was incorrect and it

appears that the ALJ cited a wrong exhibit number.  But that error is harmless

because the medical records as a whole support the ALJ's finding.  Here, Plaintiff's

symptoms were relieved to the extent that her treating source, ARNP Kirner,

---

[198] AR 25.

[199] 20 C.F.R. § 404.1529(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with

medication are not disabling for the purpose of determining eligibility for SSI

benefits.").

[200] *Holohan v. Massanari*, 246 F.3d1195, 1205 (9th Cir. 2001); *see also Lester v.

Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are

not inconsistent with disability.").

[201] *See* 20 C.F.R. § 404.1520a(c)(1).

1    opined that her condition was well-controlled on medication with only mild to

2    moderate symptoms even in periods when significant stressors were present.[202]

3        Overall, the ALJ's reasoning that Plaintiff's symptoms improved with

4    medication is supported by the medical record as discussed above.  Notably, the

5    only inpatient hospitalization mentioned in the record is one in which Plaintiff

6    voluntarily asked for admission and then left early, which would indicate that

7    psychiatric staff felt no reason to admit her involuntarily.

8        While the medical record might be interpreted in a different manner, it is

9    not the duty of the Court to reweigh the evidence, but instead to determine

10   whether substantial evidence supports the ALJ's decision.  The Court concludes

11   that the ALJ adequately explained her reasoning.  The Court declines to remand as

12   to this issue.

13   **B.    Medical Opinions: Plaintiff fails to establish consequential error.**

14       Plaintiff argues the ALJ erred by finding that the opinion of the consultative

15   examiner, Dr. MacLennan, was not persuasive because it was too restrictive.

16   Plaintiff argues that the ALJ failed to consider the effect that anxiety in the

17   workplace would cause, erred by finding Dr. MacLennan's opinions inconsistent

18   with Plaintiff's ability to work, erred in considering that Dr. MacLennan was not a

19   treating source and did not have a longitudinal relationship, and erred in

20   considering that Dr. MacLennan's opinion was inconsistent with reports of

21

22   _____

     [202] AR 1293.

23

1    improvement in Plaintiff's symptoms with medication.  The Commissioner

2    responds that the ALJ properly assessed Dr. MacLennan's opinion.  First, the

3    Commissioner asserts that by failing to raise an argument as to the supportability

4    factor, Plaintiff has waived it.  He then argues that Dr. MacLennan's examination

5    findings were inconsistent with her opinions, that the ALJ's reasoning was sound

6    that Plaintiff performed socially demanding jobs during the relevant period, and

7    that the record showed benign findings and improvement with treatment.  The

8    Commissioner also argues that the ALJ's consideration that Dr. MacLennan was

9    not a treating source was only a part of her reasoning.

10        The Court addresses each of these arguments. As is explained below, the

11    ALJ reasonably found that Dr. MacLennan's opinions were not sufficiently

12    explained or supported by the record.

13        1.   Standard

14        An ALJ must consider and articulate how persuasive she found each medical

15    opinion, including whether the medical opinion was consistent with and supported

16    by the record.[203] The factors for evaluating the persuasiveness of medical opinions

17    include, but are not limited to, supportability, consistency, relationship with the

18    claimant, and specialization.[204] Supportability and consistency are the most

19

20    [203] 20 C.F.R. § 440.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir.

21    2022).

22    [204] 20 C.F.R. § 404.1520c(c)(1)–(5).

23

1    important factors.[205] When considering the ALJ's findings, the Court is constrained

2    to the reasons and supporting explanation offered by the ALJ.[206]

3          2.    <u>Dr. MacLennan's opinion</u>

4          Dr. MacLennan examined Plaintiff at Plaintiff's request on March 8, 2021.[207]

5    Dr. MacLennan noted that she had reviewed the following medical records: a

6    referral from Family Health Center, noting a diagnosis of Bipolar Disorder;

7    treatment records from April 1, 2020, to February 8, 2021; and progress notes from

8    Frontier Behavioral Health from August 11, 2020, through August 15, 2020.[208]   On

9    examination, Plaintiff was well-groomed and cooperative.[209] Plaintiff reported that

10    her mood was "alright" and that she had a lot on her plate and was anxious, and

11    her affect was congruent.[210] She had no delusions or hallucinations, had normal

12    speech, no suicidal or homicidal ideation, normal thought process, and normal

13    recent and remote memory.[211] Dr. MacLennan opined that Plaintiff had average

14    intelligence and that she repeated five digits forward twice and three digits

15

16    [205] *Id.* § 404.1520c(b)(2).

17    [206] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

18    [207] AR 765-779.

19    [208] AR 765.

20    [209] AR 768.

21    [210] AR 768-769.

22    [211] AR 769.

23

backwards and that "otherwise, her mental status examination was entirely normal."[212]   Plaintiff reported the following major stressors in the past year: changes in her job due to the Covid pandemic, a bankruptcy filing, filing for divorce, major surgery in July 2020, fracturing her foot in August 2020, checking into a psychiatric hospital in August 2020 but leaving early due to lack of childcare, her child's father filing an unsuccessful challenge for custody of her child and an online boyfriend who wanted to marry.[213]

Dr. MacLennan noted that her finding and Plaintiff's endorsement of restless sleep, memory problems, forgetfulness, poor concentration, irritability, fear of losing control, excessive hand washing, and unusual eating habits, supported her diagnosis.[214] Plaintiff also endorsed sleep difficulty, fatigue, decreased libido, being withdrawn, suicidal thoughts, hopelessness, nightmares, panic, anxiety, confusion, and having gained 10 pounds.[215] Dr. MacLennan diagnosed bipolar disorder, complex PTSD, mood disorder, and rule out learning disorder mathematics.[216]   Dr. MacLennan opined that Plaintiff performed well in part

---

[212] *Id.*

[213] AR 770.

[214] AR 771-772.

[215] *Id.*

[216] AR 772.

because she had not been under stress from working for several months.[217]

Plaintiff's mental status examination score was 30 of 30.[218]

Dr. MacLennan assessed Plaintiff with marked limitations in her ability to carry out detailed instructions; maintain concentration persistence and pace; maintain a schedule; sustain an ordinary routine; interact appropriately with others; accept instructions; respond appropriately to changes; and set realistic goals.[219] She also assessed severe limitations in Plaintiff's ability to work in coordination with or proximity to others and to maintain attendance.[220] Overall, Dr. MacLennan assessed an extreme limitation in Plaintiff's social functioning and a marked limitation in concentration, persistence, and pace.[221] She also opined that Plaintiff would be off-task over 30% of the time and would miss 3 days of work per month.[222]

---

[217] Id.

[218] AR 775.

[219] AR 777-778.

[220] *Id.*

[221] AR 779.

[222] *Id.*

3.    The ALJ's findings

When evaluating Dr. MacLennan's opinion, the ALJ gave several reasons for concluding that it was not persuasive.[223]  First, the ALJ found that Plaintiff's examination was inconsistent with the opinion, stating:

> Dr. MacLennan's examination showed the claimant arrived on time for her Zoom appointment and there were no concerns about her appearance. There was no psychomotor hyperactivity, retardation, or agitation. She was noted to be open, cooperative, and likable. She reported her mood was alright and her affect was congruent but her mood for the last week had been anxious.  There were no indications of perceptual disturbances or speech problems. Her thinking was linear, clear, and goal oriented. She was able to respond to questions, and there were no concerns as to recent or remote memory. She had low range immediate memory, but she was able to perform basic mathematics. Despite her report of test accommodations for her anxiety, her intelligence was found to be average.[224]

The ALJ considered further that Dr. MacLennan did not have a longitudinal relationship with Plaintiff, stating:

> Further, Dr. MacLennan is not the claimant's treating psychologist, did not have a longitudinal treating relationship with the claimant, and only examined the claimant for the evaluation at the direction of her representative, suggesting her opinion regarding the claimant's mental limitations are largely based on the claimant's subjective complaints.[225]

---

[223] AR 27-28.

[224] AR 28.

[225] *Id.*

1

2

3

The ALJ then went on to consider that Dr. MacLennan had not had an opportunity to review the complete medical record and was not aware that subsequent records indicated improvement with medication and treatment.[226]

4        4.    Relevant medical records

5

6

In its prior finding, the Court cited the medical records of ARNP Kirner and Family Health Centers. Those records are incorporated herein, by reference.

7        5.    Analysis

8

9

10

11

12

13

First, the Court concludes that the Commissioner is correct in his assertions that because Plaintiff did not argue that the ALJ's analysis regarding supportability was flawed, she has waived the argument. Thus, the Court will accept and credit that the ALJ did not err when reasoning that Dr. MacLennan's findings on mental status examination were inconsistent with her opined limitations and Dr. MacLennan's opinions fail regarding the supportability factor.

14

15

16

17

18

19

20

Additionally, the Court finds that Plaintiff took the ALJ's language with regard to the fact Dr. MacLennan was not a treating source out of context. It would appear from the ALJ's language that the ALJ considered that Dr. MacLennan examined Plaintiff at the request of her attorney and found the opinion to be less than impartial.[227] The Court finds that the ALJ did not act improperly in considering the partiality of Dr. MacLennan's opinion. Moreover,

21

[226] *Id.*

22

[227] AR 28.

23

this was only one of several reasons that the ALJ found Dr. MacLennan's opinion not persuasive.[228]

Then turning to the consistency factor, the Court concludes that the ALJ correctly found that Dr. MacLennan's opinions were at odds with the record as a whole.  The ALJ appropriately considered Dr. MacLennan's and Dr. Reget's opinions by themselves and against each other and to the remaining record, including the treatment notes and mental-status screenings with primary care treating and counseling providers.[229] For example, as discussed above, PA Huffstedler's, ARNP Kirner's, and LMHC Eddy's notes indicate that they typically observed normal mood and affect.[230]  Moreover, as a one-time examiner, Dr. MacLennan appears to have relied heavily on Plaintiff's subjective complaints, which the ALJ found not entirely credible.  This is a record with evidence that is susceptible to more than one rational interpretation,[231] and the ALJ's finding that Dr. Reget's opinion is supported by and consistent with the record more than

---

[228] *Id.*

[229] 20 C.F.R. § 404.1520c(c)(1) (comparing the medical opinion in question to "*evidence* from other medical sources and nonmedical sources).

[230]  AR 889, 915, 922, 926, 931, 945, 1304, 1329, 1353, 1345, 1348, 1334, 1344, 1359

[231] *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

1   Dr. MacLennan's opinion is a rational interpretation of the record. The ALJ's

2   findings in this regard are upheld.

3       6.   <u>Summary</u>

4       It is the ALJ's responsibility to review and evaluate the conflicting evidence

5   and medical opinions.[232] The ALJ meaningfully explained why she evaluated the

6   mental-health-related medical opinions as she did, and these reasons are

7   supported by substantial evidence.

8                   **IV.    Conclusion**

9       Accordingly, **IT IS HEREBY ORDERED**:

10      1.    The ALJ's nondisability decision is **AFFIRMED**.

11      2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and**

12            **13,** enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE**

13            the case.

14      IT IS SO ORDERED. The Clerk's Office is directed to file this order and

15  provide copies to all counsel.

16      DATED this 3rd day of January, 2024.

17                    _Edward F. Shea_

18                    _____
                      EDWARD F. SHEA
19                    Senior United States District Judge

20

21

22  _____

23  [232] _Tackett v. Apfel_, 180 F.3d 1094, 1102 (9th Cir. 1999).